**FOR PUBLICATION**

```
            IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                 DIVISION OF ST. THOMAS AND ST. JOHN

CAROL LILES,                           )
                                       )
          Plaintiff,                   )
                                       )
          v.                           )
                                       )
REVETAW, INC., d/b/a WATER ISLAND      )   Civil No. 2003-88
FERRY, STEVE RAMPINO and STEVE         )
SCULLY,                                )
                                       )
          Defendants.                  )
                                       )
```

APPEARANCES:

**Carol Liles,**
Water Island, U.S.V.I.
     *Pro se plaintiff,*

**James M. Derr, Esq.**
St. Thomas, U.S.V.I.
     *For defendants Steve Rampino,*

**Steve Scully**
St. Thomas, U.S.V.I.
     *Pro se defendant.*

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court are the renewed motions of defendants Steve Rampino ("Rampino") and Steve Scully ("Scully") (collectively, the "Defendants") to dismiss and for summary judgment.[1]

---

[1] Although the instant motions are styled as requests for summary judgment, the Defendants have specifically argued that Count One should be dismissed for failure to state a claim upon which relief may be granted.

*Liles v. Revetaw, Inc., et. al.*
Civil No. 2003-88
Memorandum Opinion
Page 2

### I. FACTS

Carol Liles ("Liles") describes herself as "a black Negro." (Am. Compl. ¶ 2.) She claims to suffer from "severe spinal stenosis with multiple bulging disc syndrome and chronic pain, which requires her to walk with the aid of a walker or cane." (*Id.* at § 7.) Additionally, Liles has expressed a great fear of dogs.

During the time periods relevant to this matter, Liles resided on Water Island, U.S. Virgin Islands. Liles used the Water Island Ferry to travel between St. Thomas and her home on Water Island. The Defendants were employees or owners of the ferry. Dogs were permitted to ride on the Water Island Ferry. In May, 2002, Liles complained to the ferry operators about the presence of dogs on the vessels.

Thereafter, Liles was involved in a series of disputes with ferry personnel. In October, 2002, Liles had a verbal dispute with Steve Rampino, one of the owners of the Ferry, regarding the presence of dogs. On November 5, 2002, the individual captaining the ferry allegedly screamed at Liles and initially refused to sell her a ticket. He eventually sold Liles a ticket, but refused to wait for her to be seated before departing from the marina. The vessel struck the dock as it left. On December 27, 2002, a physical altercation erupted between Liles and the

*Liles v. Revetaw, Inc., et. al.*
Civil No. 2003-88
Memorandum Opinion
Page 3

captain of the ferry, Michael Clemens ("Clemens").[2] Rampino intervened. In approximately December, 2002, or January, 2003, a ferry employee allegedly screamed at Liles while she was picking up a package from the ferry.

Liles subsequently filed suit against the Defendants. Count One of Liles' Amended Complaint ("the Complaint") alleges violations of 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), 42 U.S.C. §§ 1981, 1983 ("Section 1981," and "Section 1983," respectively), and 41 U.S.C. §§ 12101 *et seq.* (the "Americans with Disabilities Act," or the "ADA"). Count Two alleges violations of unspecified sections of Titles 10 and 24 of the Virgin Islands Code. Count Three alleges violations of unspecified rules and regulations of the U.S. Coast Guard. (Am. Compl. ¶ 40.) Counts Four through Seven allege that the Defendants committed intentional and/or negligent infliction of emotional distress, negligent operation of a vessel, assault and battery, tortious violation of unnamed "laws of the proper operation of a vessel." (*Id.* at ¶ 53.)

On August 3, 2006, Rampino filed a motion to dismiss and for summary judgment against Liles. On September 28, 2006, the United States Magistrate Judge granted Liles' motion for leave to

---

[2] Clemens was originally named as a defendant in this action. However, Clemens died on August 27, 2006. On July 16, 2008, at which time no motion for substitution had been made, the Court entered an Order dismissing Clemens from the matter under Federal Rule of Civil Procedure 25.

amend her complaint. Rampino timely appealed the Magistrate Judge's order. On October 25, 2006, Scully moved to dismiss and for summary judgment against Liles.

In an Order dated February 21, 2007, this Court affirmed the Magistrate Judge's order granting Liles leave to amend the Complaint. Also on February 21, 2007, the Court denied the pending dismissal and summary judgment motions as moot.

Liles failed to file a Second Amended Complaint within the deadline imposed by the Court, despite receiving an extension of time within which to do so. The Defendants now renew their motions to dismiss and for summary judgment.

## II. ANALYSIS

### A. Summary Judgment Motion

The Defendants seek summary judgment on the ADA claims alleged in Count One, as well as on Counts Two through Seven of the Complaint.

Local Rule of Civil Procedure 56.1(a)(1) provides, in part, that summary judgment motions shall be accompanied by "a separate statement of the material facts about which the movant contends there is no genuine issue." LRCi 56.1(a)(1). That rule also provides that "[e]ach fact paragraph shall be serially numbered and shall be supported by specific citation to the record." *Id.*

*Liles v. Revetaw, Inc., et. al.*
Civil No. 2003-88
Memorandum Opinion
Page 5

The Defendants' motion neither includes nor is accompanied by a separate statement of material facts. Accordingly, the Defendants' motion for summary judgment will be denied without prejudice.

**B.   Motion to Dismiss**

The Defendants argue that Count One should be dismissed insofar as it alleges a violation of Title VII, Section 1983, and Section 1981. They contend that Count One fails to state a claim upon which relief may be granted under those statutes.

**1.   Rule 12(b)(6) Standard**

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). All reasonable inferences are drawn in favor of the non-moving party. *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004). A court must ask whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atlantic Corp.*, 127 S.Ct. at 1969 (emphasis in original) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

*Liles v. Revetaw*, *Inc., et. al.*
Civil No. 2003-88
Memorandum Opinion
Page 6

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id*. at 1964-65 (internal citations omitted). Thus, "[t]o survive a motion to dismiss, a . . . plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp*., 127 S.Ct. at 1965).

**2.  Title VII**

Title VII focuses on the regulation of discriminatory employment practices by "employers." *See* 42 U.S.C. § 2000e-

*Liles v. Revetaw, Inc., et. al.*
Civil No. 2003-88
Memorandum Opinion
Page 7

2(a)(1) (1991);[3] *see also Equal Employment Opportunities Commission v. Shell Oil Co.*, 466 U.S. 54, 77, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984) (explaining that the dominant purpose of Title VII is to root out discrimination in the *employment* context). Title VII also limits liability to "employers" that retain fifteen employees, and includes "agents" of an employer within the definition of "employer." *See* 42 U.S.C. § 2000e-(b) (1991).

Here, the Complaint alleges that Liles was a passenger on the Water Island Ferry. There is nothing in the Complaint to support the inference that Liles has ever had any employment relationship with Rampino or Scully. Because Liles had not alleged that the Defendants were ever her employers, she has failed to state a claim upon which relief may be granted under Title VII. *See id.; see also, e.g., Shell Oil Co.*, 466 U.S. at 77 ("Title VII only addresses acts by the 'employer.'").

---

[3] Title 42, section 2000e-2(a)(1) of the United States Code provides:

> It shall be an unlawful employment practice for an employer-
>
>> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1).

*Liles v. Revetaw*, *Inc., et. al.*
Civil No. 2003-88
Memorandum Opinion
Page 8

### 2. Section 1983

To state a claim under Section 1983,[4] a plaintiff must demonstrate that: "(1) the defendants acted under color of law; and (2) their actions deprived him of rights secured by the Constitution or federal statutes." *Anderson v. Davila*, 125 F.3d 148, 159 (3d Cir. 1997).

The conduct of a private actor may be considered action taken "under color of law" for purposes of Section 1983 under two broad circumstances. *Leshko v. Servis,* 423 F.3d 337 (3d Cir. 2005). First, "an *activity* that is significantly encouraged by the state or in which the state acts as a joint participant" may be considered to be conducted under color of law. *See id.* at 340 (emphasis in original) (framing the first issue as "whether the fingerprints of the state are on the activity itself"); *see also Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534

---

[4] The pertinent part of Section 1983 provides:

> Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory* or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

42 U.S.C. § 1983 (emphasis added).

*Liles v. Revetaw*, Inc., et. al.
Civil No. 2003-88
Memorandum Opinion
Page 9

(1982) (explaining that state action is present where the state provides "significant encouragement, either overt or covert" for the activity).[5] Second, "an *actor* that is controlled by the state, performs a function delegated by the state, or is entwined with government policies or management," may be considered to be acting under color of law. *Leshko*, 423 F.3d at 340 (framing the second issue as "whether the state so identifies with the individual (or entity) who took the challenged action that we deem the state's fingerprints to have been on the action"); *see also, e.g., Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (finding a private association to be a state actor because of the "pervasive entwinement of public institutions and public officials in its composition and workings"); *Pennsylvania v. Bd. of Dir. of City Trusts of Philadelphia*, 353 U.S. 230, 231, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957) (per curiam) (holding that a private organization was a state actor because it was controlled by a state agency).

The Complaint in this matter fails to explicitly allege that the Defendants acted under color of law. Liles has merely

---

[5] The requirements for satisfying the "color of the law" requirement of 42 U.S.C. § 1983 and the "state-action" requirement of the Fourteenth Amendment are identical in most contexts. *Groman v. Township of Manapalan*, 47 F.3d 628, 639 n. 15 (3d Cir. 1995).

*Liles v. Revetaw, Inc., et. al.*
Civil No. 2003-88
Memorandum Opinion
Page 10

alleged that "the ferry service operates Coast Guard inspected vessels and . . . is subject to their laws and rules." (Am. Compl. at ¶ 11.)[6] Those allegations do not show that the state encouraged or participated in conduct described in the Complaint, or controlled the Defendants. *See Leshko*, 423 F.3d at 340 (holding that state approval or acquiescence is not considered conduct under color of law for Section 1983 purposes). Because Liles has failed to allege any facts to suggest that the Defendants acted under color of law, she has failed to state a claim under Section 1983. *See, e.g., Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1266 (3d Cir. 1994) (holding the plaintiff failed to state a Section 1983 claim against a law firm for causing the entry of a confessed judgment against him because "[a] state procedure permitting private parties to file a complaint and confess judgment essentially involves acquiescence by the state, not compulsion. In such circumstances, private conduct is not attributable to the state"); *D.R. by L.R. v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364, 1376 (3d Cir. 1992) (concluding that students who were allegedly molested by other students failed to state a Section 1983 claim

---

[6] Liles concedes that Rampino had the sole power to determine who could ride on the Ferry, and that local government does not regulate the Ferry.

*Liles v. Revetaw, Inc., et. al.*
Civil No. 2003-88
Memorandum Opinion
Page 11

against school officials because the case did not involve a violation by state actors).

### 3. Section 1981

Pursuant to Section 1981(a):

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a). Section 1981 is designed to prevent racial discrimination. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (explaining that, in passing Section 1981, Congress intended to protect identifiable classes of persons who experience intentional discrimination solely because of their ancestry or ethnic characteristics).

To succeed on a claim under Section 1981, a plaintiff must demonstrate: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intentionally discriminated against the plaintiff based on race; and (3) that the discrimination concerned the right to make and enforce contracts. *See Dominos Pizza Inc., v. McDonald*, 546 U.S. 470, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006); *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001).

"Any claim brought under [Section] 1981, therefore, must initially identify an impaired contractual relationship, under which the plaintiff has rights." *Domino's Pizza, Inc.,* 546 U.S. at 476 ("Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship."). "The term contract, as used in [Section] 1981, refers to a right in the promisee against the promisor, with a correlative special duty in the promisor to the promisee of rendering the performance promised." *Adams v. McDougal,* 695 F.2d 104, 108 (5th Cir. 1982); *see also* 42 U.S.C. § 1981(b) (defining the term "make and enforce contracts" to include the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship").

Here, the Complaint alleges that Liles is a member of a racial minority. The Complaint does not explicitly allege that any contract or proposed contract existed, but it does state that Liles purchased monthly passes to ride on the Water Island Ferry. The ferry passes constituted implied contracts between Liles and the Water Island Ferry, pursuant to which Liles paid money in

*Liles v. Revetaw, Inc., et. al.*
Civil No. 2003-88
Memorandum Opinion
Page 13

consideration for transportation on the ferry. *See*, *e.g.*, *Huggar v. Northwest Airlines, Inc.*, 1999 WL 59841 at *4 (N.D. Ill. Jan. 27, 1999) ("The contract of carriage is sufficient to establish that a contract existed. [The plaintiff] purchased the airline ticket and in turn, Northwest Airlines was to transport him to Minneapolis.") (unpublished); *see also, e.g., Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2001) (holding that a coupon for a free fragrance sample given to a store customer after she purchased items from the store constituted a benefit of her purchase contract, so the alleged interference with her right to redeem the coupon based on her race could potentially support a Section 1981 claim).

The Complaint describes several instances in which Liles had difficulty boarding the ferry due to the presence of dogs or the conduct of ferry employees. For example, "[o]n December 27, 2002, as [Liles] was trying to board the ferry, Michael Clemens . . . jumped in front of [Liles] and knocked her out of the entrance to the ferry . . . ." (Am. Compl. at ¶ 23, Jan. 27, 2004.) Liles also alleges that the "Defendants . . . refused to allow [Liles] to board the ferry and have declared that [Liles] would never be allowed to ride the ferry again without an order

*Liles v. Revetaw*, Inc., et. al.
Civil No. 2003-88
Memorandum Opinion
Page 14

from the court." (*Id.* at ¶ 24.)[7] Additionally, the Complaint states that the Defendants' gave Liles "unequal treatment based on her race and color," and refers to "their racially . . . motivated constant harassment of Plaintiff." (*Id.* at ¶ 20.) It alleges that the Defendants' conduct was "racially motivated" and "derogatory." (Am. Compl. at ¶ 20.)

Liles has alleged that she is a member of a racial minority, that the defendant intentionally discriminated against the plaintiff based on race, and that the discrimination concerned her right to contract to ride on the ferry. Liles has therefore stated a cause of action under Section 1981. *See, e.g., Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 569-70 (3d Cir. 2002) (holding that allegations that a collegiate athletic association engaged in purposeful race discrimination when it adopted a rule establishing scholarship and athletic eligibility criteria for incoming student athletes stated a claim under Section 1981); *Donaire v. NME Hosp., Inc.*, 27 F.3d 507, 509 (11th Cir. 1994) ("Plaintiff's allegation that he or she was subjected to intentional discrimination because of his or her 'ancestry or ethnic characteristics' satisfies the pleading requirements of section 1981."); *Mahmud v. Kaufmann*, 496 F. Supp. 2d 266, 274

---

[7] On the other hand, "[a]fter the filing of this suit, Defendants through negotiations agreed to allow [Liles] to pay to ride the ferry again." (*Id.* at ¶ 25.)

*Liles v. Revetaw, Inc., et. al.*
Civil No. 2003-88
Memorandum Opinion
Page 15

(S.D.N.Y. 2007) (holding that a physician's allegations that the defendants prevented her from contracting with a medical center on the basis of her race were sufficient to state a claim under Section 1981).

### III. CONCLUSION

For the reasons given above, the Court will deny the Defendants' motion for summary judgment. The Court will grant the Defendants' motion to dismiss Count One to the extent it asserts claims under Title VII and Section 1983. The Court will deny the motion to dismiss Count One to the extent it alleges a claim under Section 1981. An appropriate Order follows.

S\_____
**Curtis V. Gómez
Chief Judge**