IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| CAROL LILES | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | No. 03-88 |
| INC. REVETAW, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                          **August 10, 2010**

Defendants Steven Rampino and Steven Scully ask this Court to grant summary judgment on Plaintiff Carol Liles's claims Defendants discriminated against her because of her race and disability, committed various common law torts, and violating unspecified sections of the Virgin Islands Code and United States Coast Guard regulations. For the following reasons, this Court will grant each Defendant's motion for summary judgment.

**FACTS**

Plaintiff Carol Liles is an African-American woman who lives on Water Island in the United States Virgin Islands. Defendant Steven Rampino is the owner of Revetaw, Inc., a company which operates a ferry service carrying passengers and their cargo between Crown Bay Marina on St. Thomas Island and Honeymoon Bay on Water Island. Defendant Steve Scully is a former partner in the ferry business.

On October 5, 2001, Scully and Rampino entered into a verbal partnership, called "Steve Squared." The partnership purchased a ferry from Revetaw, Inc., the former ferry operator. On March 6, 2002, the men filed Articles of Incorporation for a new business, Water Island Ferry, LLC. These Articles, however, were never finalized. Two months later, in May 2002, Scully and Rampino decided to dissolve the unfinished LLC and Steve Squared. On June 6, 2002, Rampino became the

sole proprietor and manager of the Water Island Ferry. Full ownership of the ferry was transferred to Rampino on August 27, 2002, and Scully's interest in the partnership was officially sold to Rampino on October 1, 2002. After this date, Scully continued to act as Rampino's creditor while Rampino repaid his 50% interest in the company.

The Water Island Ferry has Coast Guard certification to transport up to 31 passengers. The number of passengers the ferry can safely transport is reduced by the amount of cargo being carried during a particular trip. Passengers typically carry luggage and large bags, and often transport their pets on the ferry. Passengers and their cargo are loaded on a first-come, first-served basis. In the event there are more people seeking passage than the ferry can safely transport, the ferry will make multiple trips to accommodate the extra passengers.

Liles has a contentious history with the Water Island Ferry. Between 2001 and 2002, Liles frequently used the ferry to travel to and from her home on Water Island. On several occasions during that period, Liles told Rampino she was afraid of dogs. In an attempt to accommodate her fear, when Liles traveled on the ferry, the ferry staff made a practice of loading passengers with dogs first and placing them at the rear of the boat, then seating Liles at the front of the vessel. Liles protested the presence of dogs on the ferry in May and October of 2002.

Another incident between Liles and the Water Island Ferry staff occurred on November 5, 2002, when Liles asserts she was yelled at by the ferry's captain and initially refused a ticket for passage. Liles has not specified the substance of the captain's comments or the reason she was initially refused a ticket. She maintains the ferry captain eventually sold her a ticket, but then did not wait for her to sit down before pulling the vessel away from the dock. Staff members of the Water Island Ferry contend Liles was told to sit down before the ferry departed Crown Bay Marina,

but she refused. The ferry Captain further informed Liles that if she did not sit down, she assumed the risk of any injury she may suffer. Despite this admonition, Liles stood for the balance of the trip. The vessel struck the dock as it departed, and although Liles was jostled, she was not injured. Liles also maintains on another occasion, in either December 2002 or January 2003, a ferry employee yelled at her when she picked up a package from the ferry.

On December 27, 2002, a physical confrontation took place between Liles and Water Island Ferry staff. The ferry had many passengers because of increased holiday travel, and most passengers were carrying large suitcases and parcels. When Liles arrived at the Crown Bay dock, the ferry was loaded to capacity. Before Liles arrived, at least three Caucasian passengers had been denied admittance to the boat and told they would have to wait for the ferry's return. When Liles arrived and requested a ticket, the ferry captain, Michael Clemens, also informed her the boat was full and she would have to wait for the second trip. Liles became angry and attempted to board the vessel despite this instruction. In doing so, she threw a suitcase she was carrying onto the ferry, striking an elderly passenger in the head. Liles then attempted to board the ferry herself as it was departing from the dock. Clemens stepped between Liles and the ferry to prevent her from falling into the water, and Liles struck Clemens in the face with a full bottle of water, knocking him to the ground. Once Clemens had fallen, Liles continued to strike him on his head with her cane. Rampino intervened to prevent Liles from striking Clemens further. Several police officers intervened, took Liles's cane, and took statements from the parties involved.[1]

---

[1] The parties have not informed the Court if any criminal action was instigated against Liles, Clemens, or Rampino.

On May 21, 2003, Liles filed suit against Scully, Rampino, and other named defendants.[2] Count One of Liles's complaint alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. (Title VII), 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (ADA). Count Two alleges violations of unspecified sections of the Virgin Islands Code. Count Three alleges violations of unspecified rules and regulations of the United States Coast Guard. Counts Four through Seven alleged claims of intentional and/or negligent infliction of emotional distress, negligent operation of a vessel, assault and battery, and tortious violation of unspecified laws of the proper operation of a vessel.

On March 6, 2009, Chief Judge Curtis Gómez granted a motion by Scully and Rampino to dismiss Liles's Title VII and § 1983 claims. The same motion was denied with respect to her § 1981 claim. A corresponding motion for summary judgment on all remaining claims was denied without prejudice for failure to comply with Local Rule of Civil Procedure 56.1(a)(1), which requires a moving party to attach a statement of undisputed material facts to a motion for summary judgment. Both defendants re-filed motions for summary judgment with statements of material facts attached. Rampino re-filed on March 10, 2009, and Scully re-filed on August 25, 2009. On July 7, 2009, Rampino's renewed motion was denied without opinion, although Liles did not file an opposition to the motion. On January 9, 2010, Rampino filed a "Third Renewed Motion for Summary Judgment," which this Court construes as a motion for reconsideration of the denial of his renewed

---

[2] The complaint also names Revetaw, Inc., the prior ferry operation service, and Michael Clemens as defendants. Clemens has since passed away and has been terminated as a defendant. Revetaw Inc., listed on the complaint as Inc. Revetaw, has had no involvement in this case.

motion for summary judgment.[3]  Scully's motion was not addressed by Chief Judge Gómez before he recused himself from the case.

**DISCUSSION**

Summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  On a motion for summary judgment, a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor. *Doe v. County of Centre*, 242 F.3d 437, 446 (3d Cir. 2001).  Facts must be viewed in the light most favorable to the nonmoving party "only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.").

The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and

---

[3] A motion for reconsideration may be granted when the party seeking reconsideration shows: (1) an intervening change in the controlling law; (2) the availability of new evidence; or (3) "the need . . . to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  Reconsideration of Rampino's renewed motion for summary judgment is warranted, as the motion is supported by the record and unopposed by Liles.  As such, this Court will reconsider Rampino's motion to prevent manifest injustice.

admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. A plaintiff's proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have used at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, if a plaintiff fails to "'make a showing sufficient to establish the existence of an element essential' to their case, and for which [she] bears[s] the burden of proof at trial, there can be no 'genuine issue as to any material fact.'" *McNutt v .Estate of McNutt*, No. 09-4428, 2010 U.S. App. LEXIS 13825, at *6 (3d Cir. July 7, 2010) (quoting *Celotex*, 477 U.S. at 322-23).

Liles is proceeding pro se in this matter. Submissions by a pro se litigant "are held to less stringent standards than [courts] expect of attorneys trained in the law and legal drafting." *Alongi v. Ricci*, No. 06-4419, 2010 U.S. App. LEXIS 3933, at *12 (3d Cir. Feb. 25, 2010) (citing *Haines v. Kerner*, 404 U.S. 519 (1972)). A court "reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein." *Hodson v. Alpine Manor, Inc.*, 512 F. Supp.2d 373, 384 (W.D. Pa. 2007) (citations omitted). Despite this less stringent standard, the same summary judgment burden applies to pro se litigants, and a non-moving party "may not rely upon bare assertions or conclusory allegations, but must adduce evidence establishing that there is a genuine factual dispute for trial." *Meenan v. Harrison*, 264 Fed. Appx. 146, 148 (3d Cir. 2008) (citing *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982)).

Rampino argues he is entitled to summary judgment on Liles's 42 U.S.C. § 1981 claim because Liles has failed to establish a prima facie case of discrimination against her. In the alternative, he argues even if Liles has established a prima facie case of discrimination, she has failed to rebut the valid, non-discriminatory justification he provided for his employees' conduct.

In her § 1981 claim, Liles alleges Water Island Ferry staff discriminated against her because

of her race.[4] Claims of racial discrimination made pursuant to § 1981 are analyzed under the burden-shifting framework for Title VII claims set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Jones v. School Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999) (noting same burden-shifting framework applies to § 1981 and Title VII claims). A plaintiff 'must first establish, by a preponderance of the evidence, a prima facie case of racial discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). To state a prima facie case of discrimination, the plaintiff must show: "(1) that [s]he belong to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts." *Pryor v. NCAA*, 288 F.3d 548, 539 (3d Cir. 2002) (alterations and citations omitted). "The standard for establishing an intent to discriminate on the basis of race is identical in the Title VII and § 1981 contexts." *Id.* (alterations omitted).

If a plaintiff states a prima facie case of discrimination, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for his conduct. *McDonnell Douglas*, 411 U.S. at 802. If the defendant carries his burden, the presumption of discriminatory action raised by the prima facie case is rebutted. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). The plaintiff then has the opportunity to prove, by a preponderance of the evidence, the defendant's proffered reasons were not its actual motivation, but are merely pretexts for discrimination. *Sarullo v. U.S. Post. Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). To demonstrate a defendant's proffered reasons are pretextual, and to survive summary judgment, the plaintiff must

---

[4] Section § 1981 provides, in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981.

identify direct or circumstantial evidence allowing a fact finder to either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determining cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994); *see also Gazarov v. Diocese of Erie*, 80 Fed. Appx. 202, 205 (3d Cir. 2003) (explaining the two methods for demonstrating pretext articulated in *Fuentes* apply to claims of racial discrimination outside the employer/employee context).

Liles asserts Water Island Ferry staff discriminated against her and treated her less favorably because of her race. In support, Liles alleges Water Island Ferry staff constantly verbally abused her, and refused to sell her a ferry ticket on one occasion. She also alleges on another occasion she was denied admittance to the ferry and was physically assaulted by ferry staff. Liles has not asserted that she had a contractual relationship with Water Island Ferry. This Court, however, in liberally construing Liles's complaint, interprets her complaint as alleging she had a contract of carriage in which she paid Water Island Ferry to transport her on the ferry. *See Liles v. Revetaw, Inc.*, No. 03-88, 2009 U.S. Dist. LEXIS 17631, at *13 (D.V.I. Mar. 6, 2009). Liles has thus made out the first and third prongs necessary to establish a prima facie case. Liles has not, however, shown by a preponderance of the evidence that Defendants intended to discriminate against her because of her race. While Liles's response to Rampino's motion for summary judgment alleges "a pattern of direct and indirect intentional racial discrimination" against her, Pl.'s Opp. to Mot. for Summ. J. at 1, she fails to offer any substantiation for this conclusory statement. Similarly, while Liles maintains no "white person has been subjected to the verbal and physical abuses" that she, an African-American woman, allegedly suffered at the hands of Rampino, she identifies no evidence indicating Rampino treated African-American individuals differently than individuals of other races. The record before

8

this Court contains evidence to the contrary: Clemens and Rampino both testified three Caucasian individuals were also not permitted to board the ferry the day Liles was denied passage. Thus, Liles has not made out a prima facie case.

Even if Liles's pro se pleadings are given a liberal interpretation and this Court finds she has made out her prima facie case, she has failed to rebut Rampino's nondiscriminatory justification for his conduct. Rampino avers Liles was denied passage on the ferry on December 27, 2002, because the ferry accommodates passengers on a first come, first served basis, and when Liles arrived the ferry was filled to capacity. In support of this justification, Rampino and Clemens averred passengers other than Liles were not permitted to board the same day. Liles has not presented the Court with any evidence which conflicts with Rampino's asserted nondiscriminatory reason, or which creates a material issue of fact for this Court. Since Liles has identified no direct or circumstantial evidence leading this Court to disbelieve Rampino's articulated, legitimate reason for his conduct, or to view his explanation as a pretext for invidious discrimination, this Court will grant Rampino's motion for summary judgement on Liles's § 1981 claim.

Rampino next argues he is entitled to summary judgment on Liles's ADA claim. Liles fails to identify specific provisions of the ADA she believes Defendants violated. By liberally construing her allegations, however, this Court concludes Liles is seeking relief under 42 U.S.C. § 12184, which prohibits discrimination against individuals with disabilities in public transportation provided by private parties.[5] To state a claim under the ADA, a plaintiff must demonstrate: (1) she has a

---

[5] 42 U.S.C. § 12184(a) provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose

9

disability; (2) she was either excluded from participation in, or denied the benefits of, a public entity's services, programs, or activities, or otherwise discriminated against by the public entity; and (3) the exclusion, denial of benefits, or discrimination was based on her disability. *Redmond v. SEPTA*, No. 09-5075, 2010 WL 1131210, at *3 (E.D. Pa. Mar. 23, 2010). ADA regulation can apply to services provided by private entities as well.

Transportation services provided by private individuals are subject to ADA regulation if the transportation affects commerce. 42 U.S.C. § 12184(a). Rampino first argues the operation of a ferry exclusively within the territorial waters of the United States Virgin Islands does not implicate "commerce" as defined and required by the ADA. Commerce is defined as:

> travel, trade, traffic, commerce, transportation, or communication–
> (A) among the several states;
> (B) between any foreign country or any territory or possession and any state; or
> (C) between points in the same State but through another state or foreign country.

42 U.S.C. § 12181. The Virgin Islands are an unincorporated territory of the United States. 48 U.S.C. § 1541(a); *United States v. Hyde*, 37 F.3d 116, 121 (3d Cir. 1994). Rampino avers the ferry operates only between Crown Bay Marina on St. Thomas and Water Island, both of which are within the territorial waters of the Virgin Islands. During its route, the ferry never leaves the Virgin Islands's territorial waters. Liles does not contest the operation of the ferry is strictly intra-territorial, and she identifies no evidence suggesting the ferry travels or transports passengers between states, between a territory and a state, or between points in the same state but through another state or

---

operations affect commerce.

foreign country. Liles has therefore failed to raise a genuine issue of material fact as to whether the operation of the ferry affects commerce, as required by the ADA.

This Court also notes Liles has failed to demonstrate she has a disability covered by the ADA. Liles's pleadings suggest she believes her fear of dogs constitutes a disability under the ADA. She has also stated she has "severe spinal stenosis with bulging disc syndrome and chronic pain," though she has produced no evidence of such a diagnosis. Rampino concedes Liles's spinal stenosis, if verified, would constitute a disability for purposes of the ADA, but disputes that a fear of dogs is a protected disability. Liles has offered no evidence of any clinical diagnosis to show her fear of dogs rises to an extreme or psychologically debilitating level. Even if such evidence had been provided, it is unlikely a fear of dogs qualifies as a disability for purposes of the ADA. *See generally Calhoun v. Foodarama Supermarkets, Inc.*, No. 07-0999, 2008 WL 46918846, at *4 (D.N.J. Oct. 22, 2008) (finding the argument a cat phobia constituted disability under ADA was "tenuous at best"). Because this Court has not been presented with evidence of Liles's purported disabilities and because undisputed evidence shows the Water Island Ferry does not operate "in commerce" as defined by the ADA, this Court will grant Rampino's motion for summary judgment with respect to Liles's ADA claim.

Rampino next argues he is entitled to summary judgment on Liles's claims under unspecified sections of the Virgin Islands Code and unspecified rules and regulations of the United States Coast Guard because Liles has failed to identify the nature of these claims and has not adduced any evidence in support of these claims. While the party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact, the movant can discharge that burden by pointing the court to "an absence of evidence to support the nonmoving party's case" on

an issue for which the nonmoving party bears the burden of proof at trial. *Celotex*, 417 U.S. at 324-25. The nonmoving party is then required to point to some evidence in the record showing there is a genuine issue for trial. *Id.*; *Singletary v. Pa. Dept. of Corrections*, 266 F.3d 186, 193 n.2 (3d Cir. 2001) (explaining a "plaintiff must point to some evidence beyond her raw claim" to survive a motion for summary judgment in which the movant argues there is no evidence supporting plaintiff's case).

In responding to Rampino's motion for summary judgment, Liles does not define her claims with greater specificity or point to evidence supporting her claims under the Virgin Islands Code or Coast Guard regulations. Even construing Liles's pleadings as liberally as possible, this Court is unable to find any evidence in the record demonstrating the existence of a genuine issue for trial with regard to these claims. Thus, this Court will grant Rampino's motion for summary judgment with respect to Liles's unspecified claims under the Virgin Islands Code and Coast Guard regulations.

Finally, Rampino argues he is entitled to summary judgment on Liles's common law tort claims because she has failed to identify, and the record does not contain, any evidence supporting those claims. Rampino points to facts laid out in his and Clemens's declarations to demonstrate he caused no injury to Liles. As discussed above, when the party moving for summary judgment will not bear the burden of proof at trial and argues there is no evidence in the record to support the nonmoving party's claims, the nonmoving party must identify some evidence suggesting a genuine issue of fact for trial. *Celotex*, 417 U.S. at 324-25. An unsupported allegation in a pleading is insufficient to create a genuine issue of fact at the summary judgment stage. *Jones*, 214 F.3d at 407.

An individual is liable for intentional infliction of emotional distress in the Virgin Islands when "by extreme and outrageous conduct [he] intentionally or recklessly causes severe emotional

12

distress to another." *Eddy v. V.I. Water & Power Auth.*, 369 F.3d 227, 231 (3d Cir. 2004); Restatement (Second) of Torts § 46.[6] An individual is liable for negligent infliction of emotional distress when he unintentionally causes emotional distress to another in a situation in which he "should have realized that his conduct involved an unreasonable risk of causing the distress" and "should have realized that the distress, if it were caused, might result in illness or bodily harm." *Berrios v. Hovic*, No. 05-192, 2010 U.S. Dist. LEXIS 77525, at *26 (D.V.I. July 29, 2010) (quoting Restatement (Second) of Torts § 313). Even construing Liles's pleadings as liberally as possible, this Court is unable to find any facts which could lead a rational trier of fact to find Rampino liable to Liles for intentional or negligent infliction of emotional distress. She has not claimed Rampino engaged in extreme or outrageous conduct with the intent to cause emotional distress to her, or that he negligently ignored a situation which created an unreasonable risk of causing her distress which resulted in illness or bodily harm. These claims shall be dismissed.

Negligent operation of a vehicle in the Virgin Islands is a crime, not a tort. *See* 20 V.I.C. § 503 ("It shall be unlawful for any person to operate a motor vehicle in a negligent manner over and along the public highways of this Territory. . . in such a manner as to endanger or be likely to endanger any person or property."). While a plaintiff may bring tort claims against a defendant whose negligent vehicle operation causes her injury, Liles has failed to demonstrate Rampino's operation of the ferry caused any injury to her.

In the Virgin Islands, a defendant is liable for assault if "he acts intending to cause a harmful or offensive contact with the person of another . . . or [create] an imminent apprehension of such a

---

[6] "The Virgin Islands has designated the Restatement as its law, until a contrary statute is approved." *Eddy*, 369 F.3d 227 at 231.

contact" and the plaintiff "is thereby put in such imminent apprehension." Restatement (Second) of Torts § 21. A defendant is liable for battery if he "acts intending to cause a harmful or offensive contact with the person of [another] . . . [and] an offensive contact with the person of the other directly or indirectly results." *Id.* § 18. Both Rampino and Clemens stated Clemens's physical contact with Liles occurred only when Clemens stopped Liles from boarding the ferry for her own safety. They stated it was Liles, not Clemens, that acted as an aggressor, hitting Clemens in the face with a water bottle and on his head with her cane. Liles informed this Court she was beaten by Clemens. Even if this Court credits Liles's statement to create a genuine issue of material fact regarding whether she was assaulted, Rampino, as an employer, is not liable for the intentional tort of his employee, Clemens. While "a master is subject to liability for the torts of his servants committed while acting in the scope of their employment," he is not liable for those torts committed outside the scope of employment. *Burlington Indus. v. Ellerth*, 524 U.S. 742, 755-56 (1998). An employer is only liable for its employees' torts committed outside the scope of employment if: (1) the employer intended the conduct or consequences; or (2) the employer was negligent or reckless; or (3) the conduct violated a non-delegable duty of the employer; or (4) the employee purported to act or speak on behalf of his employer and relied upon apparent authority of the employer. Restatement (Second) of Agency § 219(2). Liles has not produced any evidence to suggest one of these exceptions should apply to Rampino to impose liability upon him for Clemens's conduct. Accordingly, this Court will grant Rampino's motion for summary judgment with regard to Liles's assault and battery claims.

Defendant Scully also asks this Court for summary judgment, arguing he was not involved in any of the events alleged in Liles's complaint. Although Liles named him as a defendant in this

case, she does not mention him in her factual allegations. Additionally, he notes he had completely relinquished his ownership interest in the Water Island Ferry by June 6, 2002, before any of the events Liles alleges in her complaint transpired. Rampino confirms he is now the sole owner of the Water Island Ferry.

Generally, each member of a partnership can be held liable for actions taken by other partners in the usual course of carrying on the business in which the partnership is engaged. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 n.6 (3d Cir. 1992); *see also In re Tutu Wells Contamination Litigation*, 846 F. Supp. 1243, 1282 (D.V.I. 1993) (holding members of partnership may be jointly and severally liable for acts of partnership). If a partner disassociates from a partnership, however, he is liable only for matters and events occurring before his disassociation. *See generally* Uniform Partnership Act of 1997 § 603(b)(3).

The record does not contain, nor has Liles identified, any evidence supporting Scully's potential liability for Liles's alleged injuries. Liles has not respond to Scully's assertion that he had disassociated himself from the partnership before the alleged incidents. Because there is no dispute Scully was not involved in the Water Island Ferry business at the time of the alleged events, this Court will grant his motion for summary judgment on all of Liles's claims.

An appropriate order follows.